**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| MICHAEL CHAD BLACK, *on behalf of himself and others similarly situated*, | § § § | |
| Plaintiffs, | § § | Case No. 1:24-cv-1323 |
| v. | § § | |
| IDEAL CONCEPTS, INC., | § § | |
| Defendant. | § § § | |

**DEFENDANT IDEAL CONCEPTS, INC.'S
MOTION TO DISMISS OR, IN THE ALTERNATIVE,
TO CERTIFY PURSUANT TO 28 U.S.C. § 1292(b)**

Plaintiff brings a putative class action against Ideal Concepts, Inc. ("Ideal Concepts") under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c)(5), contending he received telephone calls on his cellular telephone from Ideal Concepts even though he is on the national do not call list. Plaintiff thus asserts one claim under 47 U.S.C. § 227(c)(5) and through the TCPA's corresponding regulation 47 C.F.R. §§ 64.1200(c)(2) (the do-not-call registry regulations).

The problem with Plaintiff's claim is that the statutory and regulatory provisions at issue apply exclusively and unambiguously to *residential* numbers. *See* 47 U.S.C. § 227(c)(1) & (3) (allowing FCC to issue do-not-call regulations as it relates to residential telephone numbers). Plaintiff specifically alleges he received calls on his *cellular* telephone. Courts within this Circuit (and elsewhere) have determined that the provisions at issue *do not* apply to cellular telephones.

Plaintiff may argue that this Court is bound by, or at the very least, should defer to the interpretation advanced by the Federal Communications Commission ("FCC")—namely, that do-not-call regulations may apply to cellular telephone numbers. However, following the Supreme

Court's recent decisions in *Loper Bright Enterprises v. Raimondo* and *PDR Network v. Carlton & Harris Chiropractic*, this Court is not bound by FCC interpretation.  The FCC's interpretive ruling is likewise not persuasive under the *Chevron* deference rubric because the statutory provision is *unambiguous* and unambiguously applies *only* to residential telephone numbers.

Recognizing that there is a split of trial court authority on this issue—and a dearth of appellate authority on this issue—Ideal Concepts submits that if this Court finds the regulation at issue applies to cellular telephones, it should certify its Order for immediate appeal under 28 U.S.C. § 1292(b).  Whether, as a matter of law, the regulations at hand apply to cellular telephone numbers is a controlling question of law which has divided the courts in this Circuit, and the answer to which could end this case altogether.  It is, further, an issue on which the Fifth Circuit has yet to rule and is an issue that is likely to escape review without an interlocutory appeal.

This case should be dismissed with prejudice.  Plaintiff simply cannot avail himself of the claim at issue, which is evident from the face of Plaintiff's complaint itself.  Alternatively, however, this Court should certify its Order for immediate appeal under 28 U.S.C. § 1292(b).

## **BACKGROUND**

### I.    **PLAINTIFF'S ALLEGATIONS.**

Plaintiff initiated this putative class action on October 31, 2024.  (Dkt. 1.)  Plaintiff contends, in sum, that he received calls from Ideal Concepts despite that he registered on the national do not call registry a few months prior.  (*Id.* ¶¶ 12-14.)  Plaintiff alleges that the phone number at issue, beginning with (512)-925-XXXX is his *cellular* telephone number.  (*Id.* ¶ 23.)

Plaintiff asserts one claim under 47 U.S.C. § 227(c)(5), through the corresponding regulation found at 47 C.F.R. §§ 64.1200(c)(2).  Plaintiff also seeks to represent a putative nationwide class, reaching back to 2020, of persons called by or on behalf of Ideal Concepts despite being on the national do-not-call registry.  (*Id.* ¶ 27.)

## II.    REGULATORY BACKGROUND.

The TCPA, in relevant part, allows the FCC to issue regulations necessary "to protect *residential telephone subscribers'* privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1) (emphasis added). The TCPA likewise authorized the FCC to "require the establishment and operation of a single national database to compile a list of telephone numbers of *residential subscribers* who object to receiving telephone solicitations." 47 U.S.C. § 227(c)(3) (emphasis added). Claims to enforce the regulations issued pursuant to these provisions are brought pursuant to 47 U.S.C. § 227(c)(5).

Through this authority, the FCC issued regulations prohibiting telephone solicitations to:

> (2) A *residential telephone subscriber* who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations. . . .

47 C.F.R. § 64.1200(c) (emphasis added).

## DISCUSSION

## I.    PLAINTIFF HAS NO CLAIMS AS A MATTER OF LAW BECAUSE HE SOLELY ALLEGES CALLS TO A CELLULAR TELEPHONE NUMBER.

### A.    Legal Standard Under Rule 12(b)(6).

A complaint fails under Rule 12(b)(6) if it does not provide enough factual information to "state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555, 570 (2007). Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While a court must accept well-pleaded facts as true, "[w]e don't, however, accept as true legal conclusions, conclusory statements, or naked assertions devoid of further factual enhancement." *Franklin v. Regions Bank*, 976 F.3d 443, 447 (5th Cir. 2020) (cleaned up).

### B.     Section 227(c) and its Regulations Only Apply to Residential Numbers.

The subsection under which Plaintiff brings his claim applies exclusively to *residential* telephone lines.  Because Plaintiff specifically alleges having received the calls at issue on a cellular telephone, the regulation at issue does not apply as a matter of law.

As detailed above, 47 U.S.C. § 227(c) only permits the FCC to issue regulations concerning *residential* lines.  *See* 47 U.S.C. § 227(c)(1).  The TCPA distinguishes throughout the statute between *residential* and *cellular* telephones.  *Compare* 47 U.S.C. § 227(b)(1)(A)(iii) (identifying prohibited calls to "any telephone number assigned to a . . . ***cellular telephone service*** . . . .") (emphasis added) *with* 47 U.S.C. § 227(b)(1)(B) (identifying prohibited calls to "any residential telephone line"); *see also* 47 U.S.C. § 227(b)(2)(B) (allowing the FCC to make certain regulations broadly exempting calls to *residential lines*); 47 U.S.C. § 227(b)(2)(C) (allowing the FCC to make regulations exempting certain calls to *cellular telephones* only where such calls are not charged to the called party).  Under the plain language of the statute, there is no room to allow claims under 47 U.S.C. § 227(c)(5) when the calls are placed to a *cellular phone*.

Myriad courts have determined that 47 C.F.R. § 64.1200(c) does not apply to cellular telephones.  *See, e.g.*, *Callier v. GreenSky, Inc.*, No. EP-20-CV-00304-KC, 2021 WL 2688622, at *6 (W.D. Tex. May 10, 2021); *Cunningham v. Britereal Mgmt., Inc.*, No. 20-cv-144-SDJ-KPJ, 2020 WL 7391693, at *7 (E.D. Tex. Nov. 20, 2020), *report and recommendation adopted*, 2020 WL 7388415 (E.D. Tex. Dec. 16, 2020); *Cunningham v. Politi*, No. 18-00362ALMCAN, 2019 WL 2519702, at *4 (E.D. Tex. Apr. 26, 2019), r*eport and recommendation adopted*, 2019 WL 2526536 (E.D. Tex. June 19, 2019); *Gaker v. Q3M Ins. Sols.*, No. 22-cv-00296, 2023 WL 2472649, at *3 (W.D.N.C. Feb. 8, 2023) (report & recommendation).

Courts have long recognized the clear statutory difference between residential and cellular lines.  *See, e.g.*, *Barr v. Am. Ass'n of Pol. Consultants, Inc*, 591 U.S. 610, 638 (2020) (Breyer, J.

concurring) ("The statute limits robocalls to residential landlines, hospitals, emergency numbers, and business lines.  The only provision before us today, however, concerns robocalls to cell phones . . . ."); *Shelton v. Fast Advance Funding, LLC*, 378 F. Supp. 3d 356, 363 n.7 (E.D. Pa. 2019), *aff'd*, 805 F. App'x 156 (3d Cir. 2020) ("[T]he plain language of 'residential telephone' describes a telephone used by individuals in the home, and not a cellular telephone, which can be used anywhere.  Furthermore, the TCPA specifically mentions 'cellular telephone service' in § 227(b) and § 64.1200(a)(1)(iii), indicating that both Congress and the FCC were aware of the distinction between a cellular telephone and a residential telephone and purposely protected only 'residential telephone subscribers' under § 227(c), § 64.1200(c) and (d).").

The FCC has likewise separately regulated and separately treated residential and cellular telephone lines.  *See, e.g.*, *In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1859 n.4 (2012) ("For ease of reference in this Report and Order and to avoid confusion as to which rules apply to calls directed to a cellular telephone number (wireless) or to a residential telephone line (wireline), we will refer to such calls as being placed to a 'wireless number' and to a 'residential line,' respectively."); *Matter of Cargo Airline Ass'n Petition for Expedited Declaratory Ruling Rules & Reguls. Implementing the Tel. Cons. Prot. Act of 1991*, 29 F.C.C. Rcd. 3432, 3439 (2014) ("We use 'residential' to mean 'residential wireline' consumers for purposes of this order, and to be consistent with the TCPA's terminology."); *CGB Seeks Comment on Petition for Expedited Declaratory Ruling & Exemption*, 29 F.C.C. Rcd. 15267 n.7 (2014) ("The Commission has implemented different rules for HIPAA exemptions for calls to residential numbers and wireless numbers").  For example, the FCC has treated calls made on behalf of tax exempt entities and healthcare calls entirely differently when placed to residential or cellular lines.  *See* 47 C.F.R. § 64.1200(a)(2); 47 C.F.R. § 64.1200(a)(3).

As a practical matter, finding the term residential can encompass cellular lines would wreak havoc within the TCPA and its regulations.  It is impossible to blur the cellular/residential line without also blurring it throughout the TCPA, and doing so would create incompatible standards and render the TCPA internally inconsistent. *Compare* 47 U.S.C. § 227(b)(2)(B) and 47 C.F.R. § 64.1200(a)(3) (establishing exceptions for certain commercial calls made to residential lines), *with* 47 U.S.C. § 227(b)(2)(C) and 47 C.F.R. § 64.1200(a)(9) (establishing different exceptions for certain commercial calls to cellular lines).  As the D.C. Circuit put it, "[e]ven if one might hypothesize 'important reasons for treating residential and wireless telephone lines the same,' the TCPA itself presupposes the contrary—that calls to residential and wireless numbers warrant differential treatment."  *ACA Int'l v. FCC*, 885 F.3d 687, 713 (D.C. Cir. 2018); *see also Ins. Mktg. Coal. Ltd. v. Fed. Commc'ns Comm'n*, -- F.4th -- , 2025 WL 289152, at *8 (11th Cir. Jan. 24, 2025) ("Atextual good policy cannot overcome clear text.")

While the distinction between residential and cellular lines may seem antiquated, the Supreme Court recently had occasion to evaluate—and *reject*—adoptions of an interpretation of a TCPA provision to embrace the changing technological landscape.  *See Facebook, Inc. v. Duguid*, 592 U.S. 395, 400 (2021).  The Court evaluated the term "automatic telephone dialing system," against the backdrop of the technology that the TCPA was designed to address when it was written in 1991, and rejected an interpretation designed to encompass more modern technology.  *See id.* at 400, 408-09.  The Court found that the fact "Congress was broadly concerned about intrusive telemarketing practices, however, does not mean it adopted a broad autodialer definition," and, in rejecting the plaintiff's view, noted that the plaintiff's "quarrel is with Congress . . . ."  *Id.* at 408-09.  While certain elements of the TCPA may be anachronistic, it is nevertheless for Congress to address and not for expansion through judicial interpretation. *See, e.g.*, *Gaker*, 2023 WL 2472649,

at *3 ("In sum, the authority rests with Congress to amend the TCPA and bring cell phones within its [do-not-call] protections.").

Plaintiff asserts the calls were received on his *cell phone*. (Dkt. 1 ¶ 23.) Plaintiff's claims, brought pursuant to 47 U.S.C. § 227(c)(5) under 47 C.F.R. §§ 64.1200(c), *only* apply to calls to a residential line. Therefore, Plaintiff's claims must be dismissed with prejudice.

### C.    This Court Is Not Bound by FCC Interpretive Findings.

Plaintiff will likely rest his opposition on the fact that the FCC has indicated that the regulations at 47 C.F.R. §§ 64.1200(c) & (d) can apply to cellular telephones. Specifically, the FCC issued a regulation stating that "[t]he rules set forth in paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers *to the extent described in the Commission's Report and Order*," issued in 2003. 47 C.F.R. § 64.1200(e). The referenced Order states:

> Therefore, we conclude that wireless subscribers may participate in the national do-not-call list. . . . *[W]e will presume wireless subscribers who ask to be put on the national do-not-call list to be "residential subscribers*." Such a presumption, however, may require a complaining wireless subscriber to *provide further proof of the validity of that presumption* should we need to take enforcement action.

*In Re Rules & Reguls. Implementing the TCPA of 1991*, 18 F.C.C. Rcd. 14014, 14039 (2003) (hereinafter the "2003 Order" or the "Residential Subscriber Guidance"). Any reliance Plaintiff would place on this order would be misplaced.

### i.    Following **Loper Bright**, *the TCPA is for this Court to interpret.*

Last term, in *Loper Bright Enterprises v. Raimondo*, the Supreme Court eliminated *Chevron* deference. *See Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024). This ruling returned courts to their traditional function "to decide whether the law means what the agency says." *Id.* at 392. In other words, courts must utilize "the reading the court would have reached if

no agency were involved." *Id.* at 400 (internal quotations and citation omitted).  Critically, "every statute's meaning is fixed at the time of enactment." *Id.* (internal quotations and citation omitted).

Courts in this Circuit have, following *Loper Bright*, proceeded to interpret statutes (including the TCPA) without agency deference. *See, e.g.*, *Van Loon v. Dep't of the Treasury*, 122 F.4th 549, 563 (5th Cir. 2024); *R.J. Reynolds Tobacco Co. v. U.S. Food & Drug Admin.*, No. 6:20-CV-00176, 2025 WL 81336, at *8 (E.D. Tex. Jan. 13, 2025); *Tatum v. DBoss Funding, LLC*, No. 6:23-CV-565-JDK-KNM, 2024 WL 5098503, at *3 (E.D. Tex. Nov. 13, 2024), *report and recommendation adopted*, 2024 WL 5098051 (E.D. Tex. Dec. 12, 2024) (independently interpreting whether vicarious liability is available under 47 U.S.C. § 227(c)(5)).  So, too, should this Court interpret independently whether the provision at hand applies to cellular telephones.

### ii.    The Hobbs Act does not preclude review.

Plaintiff may argue that, *Loper Bright* notwithstanding, this Court is bound under the Hobbs Act to follow the FCC's 2003 Residential Subscriber Guidance.  This is incorrect for myriad reasons, not the least of which is that the Supreme Court heard oral argument on January 21, 2025 as to "[w]hether the Hobbs Act required the district court in this case to accept the FCC's legal interpretation of the Telephone Consumer Protection Act." *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, No. 23-1226.

Putting aside *McLaughlin Chiropractic*, current Fifth Circuit and Supreme Court case law indicate this Court is not bound by the 2003 Order.  In *PDR Network, LLC v. Carlton & Harris Chiropractic*, the Supreme Court recently set forth a two-step test to determine whether an FCC Order is controlling on trial courts.  *See* 139 S. Ct. 2051, 2054 (2019).  The *PDR Network* appeal arose out of the then-prevailing thought that the Hobbs Act precluded review by district courts of FCC orders.  *See id*. at 2054. A fractured Court declined to address the primary issue, but determined trial courts should engage in the following two-step analysis:

> First, what is the legal nature of the [] FCC Order?  In particular, is it the equivalent of a legislative rule, which is issued by an agency pursuant to statutory authority and has the force and effect of law? . . .  Or is it instead the equivalent of an interpretive rule, which simply advis[es] the public of the agency's construction of the statutes and rules which it administers and lacks the force and effect of law?
>
> . . .
>
> Second, and in any event, did [the party challenging the FCC's view] have a prior and adequate opportunity to seek judicial review of the Order?

*Id.* at 2055 (internal quotations and citation omitted).  The Court thus held (without resolving the issue) that if the order is interpretive or if there was no prior and adequate opportunity for judicial review, then the FCC order may not be controlling on district courts.  *See also Matthew N. Fulton, D.D.S., P.C. v. Enclarity, Inc.*, 962 F.3d 882, 888 (6th Cir. 2020) (summarizing *PDR Network*).

Justice Kavanaugh wrote a concurring opinion joined by three justices, stating the Hobbs Act does not preclude judicial review, even without the two-step analysis.  The justices concluded courts "should interpret the TCPA under usual principles of statutory interpretation, affording appropriate respect to the agency's interpretation."  *Id.* at 2058 (Kavanaugh, J. concurring).

The Fifth Circuit stated—citing Justice Kavanaugh's concurrence—that parties are still permitted "to raise as-applied challenges" in later enforcement proceedings.  *Crown Castle Fiber, L.L.C. v. City of Pasadena, Texas*, 76 F.4th 425, 440 n.23 (5th Cir. 2023), *cert. denied*, 144 S. Ct. 820, 218 L. Ed. 2d 30 (2024); *see also Ambassador Animal Hosp. v. Elanco Animal Health Inc.*, 74 F.4th 829, 832 (7th Cir. 2023) (disregarding FCC ruling without *PDR Network* analysis).  Courts outside of this Circuit have also engaged in the two-step *PDR Network* analysis and found they have the ability to review FCC interpretations and *disregard* FCC interpretations contrary to unambiguous statutory language.  *See Robert W. Mauthe, M.D., P.C. v. Millennium Health LLC*, No. 18-1903, 2020 WL 2793954, at *14-20 (E.D. Pa. May 29, 2020).  The end result is the same—this Court can engage in its own interpretation of the TCPA, unconstrained by the FCC's view.

### a.    *The 2003 Order is merely interpretive.*

The Fifth Circuit's *Crown Castle Fiber* decision notwithstanding, Ideal Concepts will

engage in the two-step *PDR Network* analysis out of an abundance of caution.  Looking to the

*PDR Network* analysis, it is evident that the Residential Subscriber Guidance is merely

interpretive, and thus nonbinding.  *See Batterton v. Francis*, 432 U.S. 416, 425 n.9 (1977) ("[A]

court is not required to give effect to an interpretative regulation.").

Generally speaking, "interpretive rules are statements as to what the administrative officer

thinks the statute or regulation means."  *Gibson Wine Co. v. Snyder*, 194 F.2d 329, 331 (D.C. Cir.

1952); *Shell Offshore Inc. v. Babbitt*, 238 F.3d 622, 628 (5th Cir. 2001).  The 2003 Order's

Residential Subscriber Guidance is interpretive.  There can be no doubt the FCC was crafting an

interpreting the statutory term "residential subscribers" for administrative efficiency.  *See, e.g.*,

*Stevens-Bratton v. TruGreen, Inc.*, 437 F. Supp. 3d 648, 658 (W.D. Tenn. 2020) ("The FCC's

intent was to afford wireless subscribers privacy equal to wired subscribers and to ease

administrative requirements for the former.").

The FCC did not find that 47 U.S.C. § 227(c) could be read to allow regulation of cell

phones.  Rather, the FCC determined the term "residential subscriber" could *include* cell phones

used as residential phones.  *See 2003 Order*, 18 F.C.C. Rcd. at 14038-39.  The FCC thus interpreted

"residential subscriber" with an eye toward efficiency for administering the do not call list.  *See*

*id.* at 14039.  The FCC seemed concerned with informing the public how it would handle the

treatment of wireless numbers in the context of enforcement actions.  *Id.* ("Such a presumption,

however, may require a complaining wireless subscriber to provide further proof of the validity of

that presumption should we need to take enforcement action."); *cf. Robert W. Mauthe*, 2020 WL

2793954, at *16 ("[T]he passage's language demonstrates that it is interpretive rather than

legislative.").  The only court to evaluate this issue, *Tessu v. AdaptHealth, LLC*, No. 23-cv-0364,

10

2023 WL 5337121, at *4 (D. Md. Aug. 17, 2023), did not give due weight (or, in fact, any consideration) to the actual language the FCC used in evaluating the interpretive/legislative distinction.  The guidance at hand is interpretive and is thus not binding.

> **b.    *Ideal Concepts had no adequate opportunity to seek review.***

This Court need only reach the second inquiry—whether Ideal Concepts had adequate opportunity for review—if it determines the guidance at issue is legislative.  Even assuming this guidance is legislative, it is not controlling here under the second prong of *PDR Network*.

The Administrative Procedure Act provides that agency action is subject to judicial review, except where "prior, adequate, and exclusive opportunity for judicial review is provided by law." 5 U.S.C. § 703.  If the Hobbs Act's review provision, which requires challenges be brought within 60 days of the order in a court of appeals, does not afford a prior and adequate review opportunity, then the Hobbs Act does not preclude a challenge in court.  *See PDR Network*, 139 S. Ct. at 2056.

Ideal Concepts could not have had a prior and adequate opportunity to seek a Hobbs Act appeal.  As Justice Kavanaugh wrote in *PDR Network*, "[i]t would be wholly impractical—and a huge waste of resources—to expect and require every potentially affected party to bring pre-enforcement Hobbs Act challenges against every agency order that might possibly affect them in the future."  139 S. Ct. at 2061.  Requiring a "challenge within 60 days or otherwise forfeit their right to challenge . . . borders on the absurd," and raises due process concerns.  *Id.* at 2062.  The 2003 Order preceded this case by 20 years.  Ideal Concepts did not even exist until 2007, making it impossible for it to have challenged the Order.[1]

---

[1]      *See* Pennsylvania Department of State, Business Entities Search for Ideal Concepts Inc., https://file.dos.pa.gov/search/business, attached hereto as Exhibit A. The Court may take judicial notice of this document.  *See Victory Med. Ctr. Beaumont, L.P. v. Conn. Gen. Life Ins.*, No. 17-cv-48, 2018 WL 3467915, at *3 (E.D. Tex. July 17, 2018)

Further, Ideal Concepts likely lacked standing to seek a Hobbs Act appeal, wherein a "party aggrieved by the final order" can institute an appeal within 60 days. 28 U.S.C. § 2344. The phrase "party aggrieved" has been held "to require as a general matter that petitioners be parties to any proceedings before the agency preliminary to issuance of its order." *Simmons v. I.C.C*, 716 F.2d 40, 42 (D.C. Cir. 1983). The only court to evaluate this issue, *Tessu*, 2023 WL 5337121, at *5, overlooked these problems entirely. This Court should determine the Hobbs Act does not require this Court to accept the Residential Subscriber Guidance. *PDR Network*, 139 S. Ct. at 2056.[2]

### iii.    The 2003 Order is entitled to no deference and should be rejected.

### a.    The 2003 order runs afoul of tools of statutory construction.

For the myriad reasons detailed above, this Court can—and, indeed, should—disregard the Residential Subscriber Guidance as contrary to the text of the TCPA.

Utilizing ordinary tools of statutory construction, the TCPA unambiguously provides that the FCC is empowered solely to issue regulations under 47 U.S.C. § 227(c) concerning "residential telephone subscribers." *See* 47 U.S.C. § 227(c)(1), (3). Congress provided *no authority* to expand do-not-call regulations to cellular lines, which appear nowhere in that provision. The TCPA itself specifically distinguishes *residential* lines from *cellular* lines in multiple circumstances. *Compare* 47 U.S.C. § 227(b)(1)(A)(iii) *with* 47 U.S.C. § 227(b)(1)(B). While the TCPA allows the FCC to issue broad regulations exempting calls to *residential lines*, 47 U.S.C. § 227(b)(2)(B), it has narrow authority to issue regulations exempting calls to "cellular telephones," limiting such authority to where such calls are not charged to the called party. *See* 47 U.S.C. § 227(b)(2)(C). The TCPA takes great care in distinguishing residential lines from cellular telephone lines.

---

[2]    Finally, this Court should follow Justice Kavanaugh's conclusion, cited in *Crown Castle* above, that the Hobbs Act does not bar this Court from evaluating a challenge to the FCC's view.

Basic canons of interpretation foreclose the FCC's view that residential subscribers can include cellular telephones. To begin, "different words in a statute have different meanings." *Cascabel Cattle Co., L.L.C. v. United States*, 955 F.3d 445, 451 (5th Cir. 2020) (internal quotations and citation omitted). This would foreclose the conclusion that "residential telephone subscriber" includes cellular telephones, which are separately used throughout the TCPA. As would the axiom that "the presumption that each word Congress uses is there for a reason" and no language should be treated as surplusage. *Advoc. Health Care Network v. Stapleton*, 137 S. Ct. 1652, 1659 (2017). Likewise, "a negative inference may be drawn from the exclusion of language from one statutory provision that is included in other provisions of the same statute." *Hamdan v. Rumsfeld*, 548 U.S. 557, 578 (2006). The use of "cellular telephone service" in 47 U.S.C. § 227(b)(1) and the *omission* of that term in 47 U.S.C. § 227(c) leads to the conclusion that the omission was *intentional*.

The FCC's view also leads to absurd results because it would have to apply throughout the TCPA, eliminating the statutory distinction that the TCPA creates between residential and cellular telephone lines. Congress crafted an explicit statutory scheme, utilizing the terms (i) "cellular telephones" and (ii) "residential telephones" in specific ways, creating different legal treatment of each and different regulatory schemes for each. Congress was clear in drafting 47 U.S.C. § 227(c), allowing the FCC to issue do-not-call regulations as to "residential telephone subscribers," which is necessarily to the *exclusion of* cellular subscribers given the context of the statute. The FCC's treatment eliminates this carefully structured distinction.

> ### b. The 2003 Order runs contrary to longstanding interpretations and treatment of the residential / cellular distinction by courts and the FCC itself.

As noted above, courts and the FCC acknowledge the TCPA's statutory distinction between residential and cellular lines. *See, e.g.*, *ACA Int'l*, 885 F.3d at 692 ("This case solely concerns the latter restrictions on telephone calls to wireless numbers."); *Cabrera v. GEICO*, 452

F. Supp. 3d 1305, 1314 (S.D. Fla. 2014) ("The TCPA's residential calls prohibition is contained in a different subsection than the cellular call prohibition and different exemptions apply" to each type of line); *Shelton*, 378 F. Supp. 3d at 363 n.7 ("[T]he TCPA specifically mentions 'cellular telephone service' in § 227(b) and § 64.1200(a)(1)(iii), indicating that both Congress and the FCC were aware of the distinction between a cellular telephone and a residential telephone and purposely protected only 'residential telephone subscribers' under § 227(c), § 64.1200(c) and (d)."); *Matter of Cargo Airline Ass'n Petition for Expedited Declaratory Ruling Rules & Reguls. Implementing the Tel. Cons. Prot. Act of 1991*, 29 F.C.C. Rcd. 3432, 3439 (2014) ("We use 'residential' to mean 'residential wireline' consumers for purposes of this order, ***and to be consistent with the TCPA's terminology*.***"); *In the Matter of Rules & Reguls. Implementing the Tel. Cons. Prot. Act of 1991*, 27 F.C.C. Rcd. at 1859 n.4 (referring to residential as wireline).

Congress drew a clear line between "cellular telephone service" on the one hand and "residential telephone lines" on the other. This is why the FCC *did not* ground its 2003 guidance in statutory authority. The FCC engaged in a series of *policy* rationales: (i) it wanted to be consistent with the FTC, (ii) allowing wireless subscribers to register on the do-not-call registry "furthers the objectives of the TCPA," (iii) many use wireless numbers in the same way as residential lines, and (iv) Congress could have specifically excluded wireless subscribers from the do-not-call provisions, but did not. *2003 Order*, 18 F.C.C. Rcd. at 14037-39. The FCC turned to policy rationales and the backward logic that Congress should have specifically *excluded* wireless lines from the do-not-call provision. The FCC *did not* contend that the term "residential telephone subscriber" was ambiguous. It simply did not like the result of the unambiguous statutory term.

There are numerous problems with the FCC's policy rationales. As the Supreme Court put it, a statute's meaning "is fixed at the time of enactment." *Loper Bright*, 603 U.S. at 400. While

usage of cellular telephones has increased, at the expense of residential lines, since the TCPA's

enactment, that does not change the meaning of the statute's terms.  *See, e.g.*, *Shelton*, 378 F. Supp.

3d at 363 n.7 (citing pertinent dictionary definitions); *Maraan v. DISH Network, L.L.C.*, No. 13-

00436, 2014 WL 12839682, at \*3 (S.D. Ohio Apr. 22, 2014) ("That some individuals currently

use only a cellular telephone at their home rather than the once traditional landline does not convert

their wireless device into a 'residential telephone line[.]'"); *Eldridge v. Cabela's Inc*., No. 16-536-

DJH, 2017 WL 4364205, at \*11 (W.D. Ky. Sept. 29, 2017) ("The provision cited, however,

concerns 'residential telephone line[s]' only (i.e., landlines).").  It would be for Congress, and not

the FCC, to alter this plain meaning.  *Gaker*, 2023 WL 2472649, at \*3.

### c.    Recent post-**Loper Bright** case law is not persuasive.

As a final matter, Plaintiff may point to post-*Loper Bright* decisions finding that the term

"residential subscriber" can include cellular telephones.  *See, e.g.*, *Cacho v. McCarthy & Kelly

LLP*, No. 23-CV-11157, 2024 WL 3293628, at \*6 (S.D.N.Y. July 3, 2024); *Lirones v. Leaf Home

Water Sols., LLC*, No. 5:23-CV-02087, 2024 WL 4198134, at \*6 (N.D. Ohio Sept. 16, 2024).

This authority is neither binding on this Court nor persuasive, and suffers from critical

problems.  First, the above courts draw a false distinction between the TCPA's statutory term

"residential telephone line" (found at 47 U.S.C. § 227(b)) and the term "residential telephone

subscriber" found at 47 U.S.C. § 227(c) (and 47 C.F.R. § 64.1200(c)).  The argument thus goes

that a "residential telephone subscriber" can logically be read more expansively such that "the term

'residential subscriber' is indifferent to technology."  *Cacho*, 2024 WL 3293628, at \*7; *see also

Lirones*, 2024 WL 4198134, at \*6.  This logic fails to hold water.

The TCPA uses "residential telephone line" and "residential telephone subscriber" not to

denote a different reach, but because common sense requires it.  For example, 47 U.S.C. § 227(b)

is structured to prohibit persons from using certain technologies to contact certain *lines* (including

residential, cellular, hospitals, etc.).  On the other hand, 47 U.S.C. § 227(c) is structured to protect persons and permits creation of a national registry to allow residential telephone *subscribers* to register.  It would make little sense to draft 47 U.S.C. § 227(c) to protect the interests of inanimate objects (*i.e.*, lines) or allow inanimate objects to sign up on a national registry.  A "residential telephone subscriber" is not intended to have a broader reach than a "residential telephone line", but just to substitute "subscriber" for "line" where it is grammatically sensible to do so.

Recall the TCPA distinguishes throughout the statute (and, in turn, the FCC's regulations) between residential lines and cellular lines.  It makes no sense to have this carefully crafted dichotomy upended by the term "residential telephone subscriber", which courts like *Cacho* and *Lirones* apparently interpret to encompasses all technologies used in the home.  Courts like *Cacho* and *Lirones* do this by engaging in interpretive gymnastics.  It is axiomatic that "[a]djectives modify nouns—they pick out a subset of a category that possesses a certain quality." *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 586 U.S. 9, 19 (2018).  A *residential* telephone is a type of telephone.  A *subscriber* is the subscriber to a residential telephone.  Courts like *Cacho* and *Lirones* unmoor these terms to isolate "subscriber" as a subscriber to any phone used at home. *See Cacho*, 2024 WL 3293628, at *8; *Lirones*, 2024 WL 4198134, at *6.  This is not tenable.

Second, courts like *Cacho* make improper policy judgments.  For example, *Cacho* viewed the contrary construction as "absurd" because "an individual who eschews landline service and who uses a cellphone exclusively in his residence (perhaps because he is homebound) would be deprived of the TCPA's protection simply because his phone lacks a cord."  *Cacho*, 2024 WL 3293628, at *7.  The court thought that depriving cellular telephone users of the ability to register on the do-not-call registry "would have sweeping 'practical consequences.'"  *Id.* at *6.

At the outset, the TCPA is a 30-plus-year-old statute.  It is not absurd that cell phones

would have been viewed differently at a time where few (if any) "eschewed" landlines in favor of cell phones—indeed, it would be entirely reasonable and expected. *See Loper Bright*, 603 U.S. at 400 (holding a statute's meaning "is fixed at the time of enactment."). Furthermore, the concern in *Cacho* that cell phone users would be deprived of the ability to register their numbers is wrong. *See Cacho*, 2024 WL 3293628, at *6. If the FCC wants to allow cell phone users to register on the do-not-call registry for purposes of administrative efficiency, it presumably may do so. The issue here is a limited one of statutory interpretation concerning who has a private right of action under the TCPA to enforce the do-not-call regulations. Cellular subscribers do not.

As a more substantive matter, the Supreme Court addressed and disregarded a nearly identical policy argument in *Facebook v. Duguid* that the TCPA should be viewed as an "agile tool" to address changing technologies, lest there be a wave of unwanted calls. *See* 592 U.S. at 409. The Court held that the plaintiff's "quarrel is with Congress, which did not define [the covered technology] as malleably as he would have liked," even if the technology identified in the statute—"and perhaps the TCPA itself"—was "senescent". *Id.*

The D.C. Circuit similarly evaluated a misguided FCC interpretation regarding whether the FCC could require, under the TCPA, solicited faxes contain opt out language. *See Bais Yaakov*, 852 F.3d at 1079. In short, the TCPA prohibits *unsolicited* faxes only, but has an exception for unsolicited faxes containing certain opt-out language. The FCC issued an order requiring opt-out language to appear on *solicited* faxes. *Id.* at 1079-81. The Court engaged in the following analysis:

> Although the Act requires an opt-out notice on unsolicited fax advertisements, ***the Act does not require a similar opt-out notice on solicited fax advertisements*** . . . . Nor does the Act grant the FCC authority to require opt-out notices on solicited fax advertisements.
>
> The text of the Act provides a clear answer to the question presented in this case. . . . Congress drew a line in the text of the statute between unsolicited fax advertisements and solicited fax

advertisements. Unsolicited fax advertisements must include an opt-out notice. ***But the Act does not require (or give the FCC authority to require) opt-out notices on solicited fax advertisements. It is the Judiciary's job to respect the line drawn by Congress, not to redraw it as we might think best***.

*Id.* at 1081-82 (emphasis added, internal citation omitted).

The FCC in *Bais Yaakov* (as it did in the 2003 Order) justified its conclusion by stating that "the agency may take an action . . . so long as Congress has not prohibited the agency action in question." *Id.* at 1082. The *Bais Yaakov* Court found this theory "backwards as a matter of basic separation of powers and administrative law. The FCC may only take action that Congress has authorized. . . . Congress has not authorized the FCC to require opt-out notices on solicited fax advertisements." *Id.* at 1082 (internal citation omitted, emphasis added). Congress clearly drew a line between residential lines and cellular lines, and this cannot be overridden by judicial fiat or the FCC. It is for *Congress* to address any perceived issue in the TCPA's reach.

## III.  ALTERNATIVELY, THIS COURT SHOULD CERTIFY UNDER § 1292(B).

Ideal Concepts is aware of myriad decisions (including in this Circuit) expanding the do-not-call regulations to cellular telephones. Ideal Concepts, as detailed above, disagrees with these decisions. As noted above, while it may be good policy to extend these regulations to cellular telephones, this is something only Congress can do. *See Bais Yaakov*, 852 F.3d at 1082; *Facebook*, 592 U.S. at 409. Should this Court join this line of authority, however, Ideal Concepts contends that this Court should certify this Order for immediate interlocutory appeal as it includes the controlling question of law whether 47 C.F.R. § 64.1200(c) applies to cellular telephone lines.

### A.  Legal Standard Under 28 U.S.C. § 1292(b).

Pursuant to 28 U.S.C. § 1292(b), this Court has the discretion to "certify an order for inter-locutory appeal where (1) the order involves a controlling question of law, (2) there is substantial ground for difference of opinion on that question, and (3) an immediate appeal may materially

advance the ultimate termination of the litigation." *Silverthorne Seismic, L.L.C. v. Sterling Seismic Servs., Ltd.*, -- F.4th -- , 2025 WL 25413, at *2 (5th Cir. Jan. 3, 2025); *see also Louisiana State Conf. of Nat'l Ass'n for the Advancement of Colored People v. Louisiana*, 495 F. Supp. 3d 400, 409 (M.D. La. 2020) (noting such appeals are disfavored and exceptional).

### B.    The Question at Hand Is a Controlling Legal Question.

Whether 47 C.F.R. § 64.1200(c) applies to cell phones is (i) controlling and (ii) a pure question of law. *See, e.g.*, *Silverthorne Seismic*, 2025 WL 25413, at *3 ("A controlling question of law must be one of law—not fact—and its resolution must materially affect the outcome of litigation in the district court.") (internal quotations and citation omitted).    There is no factual development needed; it is an issue of pure statutory interpretation.    Further, this issue could end this case.    If the regulation does not apply to cell phones, Plaintiff has no private right of action and no claim.    *See id.* ("Controlling questions thus include . . . whether a claim exists as a matter of law.") (internal quotations and citation omitted).

It also bears noting that the issue at hand is exceptional.    It is a recurring and controlling issue that is unlikely to be evaluated absent (i) an order dismissing this case or (ii) an interlocutory appeal.    To undersigned counsel's knowledge, only one appellate court has touched on this issue in the more than two decades since the FCC's 2003 Order was adopted, and even then, the issue was conceded by the defendant and it occurred pre-*Loper Bright*.    *See Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1223 (9th Cir. 2022) (evaluating on review from an order dismissing case). And even that case had a very relevant dissenting opinion.    *See id*. at 1234 (Ikuta, J. dissenting). The Fifth Circuit has not yet evaluated this issue, despite myriad orders on both sides of this issue within the Circuit.    It is highly unlikely that a defendant would take this issue through trial in a class action to appeal.    This issue is common, recurring, and in desperate need of appellate review.

### C.    There Is a Substantial Ground for Difference of Opinion.

A substantial ground for difference of opinion prong is notoriously difficult to pin down, but exists in myriad circumstances. *See, e.g.*, *Castellanos-Contreras v. Decatur Hotels, LLC*, 622 F.3d 393, 399 (5th Cir. 2010) ("Suffice it to say that this is a question about which reasonable jurists can—and, in the case of this court, do—debate."); *Ryan v. Flowserve Corp.*, 444 F. Supp. 2d 718, 724 (N.D. Tex. 2006) (noting this prong could be met where "novel and difficult questions of first impression are presented" among other things); *Hurdsman v. Gleason*, No. 1:22-CV-254-RP, 2024 WL 499595, at *3 (W.D. Tex. Feb. 8, 2024) (identifying considerations).

Critically, *no* circuit has evaluated this issue in an adversarial posture, and one evaluated this issue where it was conceded. No circuit has evaluated this issue post-*Loper Bright*. Critically, the courts within this Circuit (and elsewhere) are split. *Compare Callier*, 2021 WL 2688622, at *6; *Cunningham*, 2020 WL 7391693, at *7 (E.D. Tex. Nov. 20, 2020) *Gaker*, 2023 WL 2472649, at *3 *with Guadian v. United Tax Def. LLC*, No. EP-23-CV-00349-KC, 2024 WL 140249, at *5 (W.D. Tex. Jan. 12, 2024) (recognizing the split)*; Hunsinger v. Alpha Cash Buyers, LLC*, No. 3:21-CV-1598-D, 2022 WL 562761, at *2 (N.D. Tex. Feb. 24, 2022). Without dismissal or certification under 1292(b), it is virtually impossible for the Fifth Circuit to evaluate this issue, particularly where (like here) it arises in the context of a putative class action.

### D. An Immediate Appeal Could End this Case.

This last factor is perhaps the most apparent. If a Fifth Circuit panel were to find that 47 U.S.C. § 227(c) and 47 C.F.R. §§ 64.1200(c) do not apply to cellular telephone lines as a matter of law, this case would be over. This is an issue that would not only potentially save this Court and the Parties significant time and expense overseeing and litigating a putative class action, but would resolve a key recurring issue in TCPA litigation in this Circuit.

## CONCLUSION

For the foregoing reasons, Ideal Concepts respectfully requests the Court to (i) dismiss Plaintiff's Complaint with prejudice; (ii) in the alternative, certify its Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b); and (iii) award all other relief it deems equitable and just.


Dated:  February 13, 2025                    Respectfully submitted,

                                             /s/ Allyson R. Cady
                                             Allyson R. Cady
                                             acady@beneschlaw.com
                                             **BENESCH, FRIEDLANDER, COPLAN &
                                             ARONOFF LLP**
                                             127 Public Square, Suite 4900
                                             Cleveland, OH 44114-1284
                                             Telephone:     216-363-4500
                                             Facsimile:     216-363-4588


                                             Mark S. Eisen (*pro hac vice* forthcoming)
                                             meisen@beneschlaw.com
                                             Jamie N. Ward (*pro hac vice* forthcoming)
                                             jward@beneschlaw.com
                                             **BENESCH, FRIEDLANDER,
                                             COPLAN & ARONOFF LLP**
                                             71 S. Wacker Drive, Suite 1600
                                             Chicago, Illinois 60606
                                             Telephone:  (312) 212-4949
                                             Facsimile:  (312) 767-9192

                                             *Counsel for Ideal Concepts, Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that I have served a true and correct copy of the foregoing upon each

attorney of record and upon the Clerk of Court on this, the 13th day of February, 2025.

/s/ Allyson R. Cady
Allyson R. Cady