## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

MICHAEL CHAD BLACK, *on behalf of*
*himself and others similarly situated*,

                    Plaintiff,

v.

IDEAL CONCEPTS, INC.,

                    Defendant.

Case No. 1:24-cv-1323

## PLAINTIFF'S BRIEF OPPOSING DEFENDANT'S MOTION TO DISMISS OR
## CERTIFY UNDER 28 U.S.C. § 1292(B)

## INTRODUCTION

Chad Black owns a cellphone like nearly every American. Ubiquitous in society, cellphones have replaced landlines as the "residential" phones people use to communicate. And the Telephone Consumer Protection Act protects those cellphone users just as it does landlines, including all cellphone users listed on the National Do Not Call list. Were it otherwise, the TCPA would be rendered a relic like the landline itself, invoked only when a telemarketer happened to call a landline listed on the DNC list. Congress never intended that result, nor does the TCPA's text support it. Although first enacted in 1991, the TCPA has accounted for evolving technologies like cellphones and automated calling systems. To that end, its provisions protect "residential telephone *subscribers*" no matter the device they use as their telephone. So when Mr. Black listed his cell number on the National Do Not Call Registry, that designation protected *him*, not his cellphone, as a subscriber using a "residential" line. And his designation had teeth. It warned telemarketers like Ideal Concepts not to call him, less they risk liability under the TCPA.

But Ideal Concepts sees it differently. In its view, the TCPA protects only those relics from the past—landlines—contending that Congress never intended to protect consumers using cellphones. If that were so, Ideal Concepts could call any cellphone subscriber it wanted no matter what they thought and even if they appeared on the Do Not Call list, exposing all cellphone users to the automated onslaught that computerized calls can unleash. Nobody but a telemarketer would want that result. That includes Congress, explaining why this view has failed in district court cases across the country, including here, "particularly in light of Fifth Circuit precedent rejecting a narrow reading of 'residential telephone subscribers' in a related context." *Guadian v. Debtblue LLC*, No. EP-23-CV-329-KC, 2024 U.S. Dist. LEXIS 70167, at *16 (W.D. Tex. Apr. 16, 2024) (citing *Cranor v. 5 Star Nutrition, LLC*, 998 F.3d 686, 689-91, 693 (5th Cir. 2021).

Even so, Ideal Concepts seeks to breathe new life into a dead argument, contending the U.S. Supreme Court's decision in *Loper Bright Enterprises v. Raimondo* upends everything. 603 U.S. 369, 144 S. Ct. 2244 (2024). In *Loper*, the Supreme Court did away with *Chevron* analysis, but it did not invalidate every *Chevron*-related case. *Id*. It held only that courts must "independently" evaluate a statute's text without *deferring* to an agency's interpretation. *Id*. at 2268. This does not suggest agency interpretations lack weight. Quite the opposite, the Court clarified that "although an agency's interpretation of a statute cannot bind a court, it may be especially informative to the extent it rests on factual premises within the agency's expertise." 144 S. Ct. at 2267. That would include the FCC's 2003 TCPA Report and Order creating the presumption that cellphone lines are "residential lines" and protected under the TCPA. *In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14039 (2003). Yet in Ideal Concepts' view, without *deference* to this interpretation, the Court could never reach the same conclusion. And that is the argument's fatal flaw.

Indeed, the Court should deny Ideal Concepts' motion for three reasons. **First**, the TCPA's text and purpose establish that the TCPA protects "residential telephone subscribers" whether they use a cellphone or landline, as this Court has held *four times* post-*Loper*. Just two weeks ago, this Court repeated that it: "agrees with the vast majority of courts that have determined that § 227(c) applies to cell phones when used for residential purposes." *Butler v. Tex. Card House, LLC*, No. A-24-CV-01543-ADA, 2025 U.S. Dist. LEXIS 47774, at *5 (W.D. Tex. Mar. 17, 2025). **Second**, even if the Court disagreed, this Court lacks jurisdiction to decide the issue. Under the Hobbs Act, only appellate courts can "determine the validity of" "final orders of the [FCC]." 28 U.S.C. § 2342(1). And **third**, the Court should decline to certify this question to the Fifth Circuit because the issue lacks "substantial ground for difference of opinion about the question of law."

## BACKGROUND

In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227). Twelve years later, in 2003, President Bush signed the "Do-Not-Call Implementation Act," Pub. L. No. 108-10, 117 Stat. 557 (2003). The "Do-Not-Call Implementation Act" mandated that the FCC "issue a final rule . . . under the Telephone Consumer Protection Act" regarding the Do-Not-Call Registry regulations. 15 U.S.C. §§ 6151, 6153 (2003). The FCC followed its mandate and issued the rule applying the TCPA's protections to cell phones registered on the National Do Not Call Registry. 47 C.F.R. § 64.1200(c)(2). In it, the FCC presumed a "residential subscriber" includes wireline and wireless subscribers (the "2003 Order"). *2003 FCC Order*, 18 FCC Rcd. at 14038-14039. The FCC then incorporated this presumption into its regulation. 47 C.F.R. § 64.1200(e)

Mr. Black is a consumer who maintains a "residential line" through his cellphone. Doc. 1 "Compl." ¶ 12. In March 2024, he listed that number on the National Do Not Call Registry, bringing him under the TCPA's protections as a subscriber and consumer. *Id*. ¶ 13. But Ideal Concepts does not recognize those protections, nor does it comply with the TCPA. As a result, it called Mr. Black over a dozen times to telemarket "InsureMe" products he did not want and without his consent. *Id*. ¶¶ 14–18. And he was not alone. Other consumers have complained online and with the BBB, explaining that Ideal Concepts calls consumers even if they demand that it stop calling. *Id.* For that reason, Mr. Black sued Ideal Concepts in a class action, targeting its "en masse" campaigns that call consumers without consent under the TCPA. *Id*. ¶¶ 27–29.

## LEGAL STANDARD

Under the 12(b)(6) standard, the Court must accept "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Yumilicious Franchise, LLC v. Barrie*, 819 F.3d 170, 174 (5th Cir. 2016).That standard demands only "plausibility," not that a complaint must state a claim with certainty. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). For that reason, courts consider only whether the plaintiff has adequately pled a "cognizable" claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). And a claim is cognizable if its "factual content ... allows the court to draw the reasonable inference that the defendant is liable." *Pridgin v. Safety-Kleen Corp.*, Civil Action No. 3:21-CV-00720-K, 2021 U.S. Dist. LEXIS 240210, at *4 (N.D. Tex. Dec. 16, 2021) (citing *Iqbal*, 556 U.S. at 678).

## ARGUMENT

### a. Ideal Concepts violated the TCPA

TCPA claims under the DNC provision have three elements: (1) the receipt of "more than one" telephone call or message "within any 12-month period," (2) made "by or on behalf of the same entity," (3) to a phone number registered on the Do Not Call Registry ("DNCR"). *Myrick v. Adapthealth, LLC,* No. 6:22-CV-00484-JDK, 2023 U.S. Dist. LEXIS 120588, at *6 (E.D. Tex. June 26, 2023), *report and rec. adopted*, 2023 U.S. Dist. LEXIS 119879, (E.D. Tex. July 12, 2023). To qualify as a subscriber under this section, the consumer must be a "residential" subscriber, 47 U.S.C. § 227(c).

Mr. Black satisfies these elements. He alleges he received "more than a dozen calls from [defendant] beginning on or around September 23, 2024," despite his cell number being listed on the DNCR since March 2024. Compl. ¶¶ 13-14. And he qualifies as a "residential subscriber," because his number is listed on the registry and is a non-commercial telephone that he uses for

residential purposes. *Id.,* ¶¶ 12-13. Nothing else is required. *Rosenberg v. LoanDepot.com LLC*, No. 19-10661-NMG, 2020 U.S. Dist. LEXIS 11928, at *27 (D. Mass. Jan. 24, 2020) ("Rosenberg submits that he placed his cellular phone number on the National Do Not Call registry and that he uses his cell phone as his residential line. Those allegations are adequate for the purposes of pleading."); *Koeller v. Seemplicity Sec. Inc.*, No. 4:24-cv-00528-SRC, 2024 U.S. Dist. LEXIS 205164, *8 (E.D. Mo. Nov. 12, 2024) ("[plaintiff] alleges that he uses his cell phone for 'personal residential purposes…[this] allegation is a factual one and in no way conclusory").

As a result, Mr. Black states a claim under the TCPA.

### b.  The TCPA protects "residential subscribers," including Mr. Black

Ideal Concepts challenges Mr. Black's claim only by contending he is not a "residential subscriber." *See generally* Def.'s Mot. But this contention lacks foundation in the TCPA's text, the caselaw interpreting it, and every post-*Loper* decision. Indeed, the Court reached this same conclusion just two weeks ago: "the Court agrees with the vast majority of courts that have determined that § 227(c) applies to cell phones when used for residential purposes." *Butler*, 2025 U.S. Dist. LEXIS 47774, at *5.

The reasoning underlying that decision "begins with the text." *Ross v. Blake*, 578 U.S. 632, 638 (2016). Without a controlling statutory definition, the terms "residential" and "subscriber" take on their "ordinary, contemporary, common meaning." *Perrin v. United States*, 444 U.S. 37, 42 (1979). "Residential" means "used as a residence or by residents; restricted to or occupied by residences; and of or relating to residence or residences."[1] A "subscriber" is "[a] person who makes a regular payment in return for entitlement to…access to a commercially provided

---

[1]  "Residential." *Merriam-Webster.com Dictionary*, Merriam-Webster, https://www.merriam-webster.com/dictionary/residential (last visited March 13, 2025)

service."[2] *See also Cacho v. McCarthy & Kelly LLP*, No. 23-CV-11157 (LJL), 739 F. Supp. 3d 195, 206 (S.D.N.Y 2024). Under that meaning and "according to the TCPA's plain language and dictionary definitions of 'residence' and 'subscriber,' 'a residential subscriber is one who maintains a phone for residential purposes…*i.e.*, for personal activities associated with his or her private, domestic life.'" *Lirones v. Leaf Home Water Sols., LLC*, No. 5:23-cv-02087, 2024 U.S. Dist. LEXIS 165900, at *17 (N.D. Ohio Sep. 16, 2024) (citing *Cacho,* 739 F. Supp. 3d at 206). In other words, the analysis turns on how the subscriber uses the line, not what device or technology they use it on.

That interpretation is grounded not only in the statute's purpose, but its grammar. As one district court held: "The best reading of the word 'residential' is not that it modifies the 'telephone,' but rather that 'residential' and 'telephone' both modify the 'subscriber.' So rather than describing a 'subscriber' as one who owns a 'residential telephone,' Section 227(c)(1) describes a 'telephone subscriber' who has subscribed for 'residential,' i.e., personal, purposes. *Jackson v. Direct Bldg. Supplies LLC*, No. 4:23-CV-01569, 2024 U.S. Dist. LEXIS 8811, at *13. (M.D. Pa. Jan. 17, 2024). That reading distinguishes a "residential" subscriber from the "business or commercial telephone subscriber, who cannot be added to the Do Not Call registry." *Id.*

Indeed, the TCPA distinguishes between "business subscriber" and "residential subscriber" in 47 U.S.C. § 227(a)(2)(A): "The term "established business relationship" … "shall include a relationship between a person or entity and a *business subscriber* subject to the same terms applicable under such section to a relationship between a person or entity and a *residential subscriber*." (emphasis added). This shows "Congress used the term 'residential' in the broader

---

[2] "Subscriber." *Oxford English Dictionary* (2024), https://www.oed.com/dictionary/subscriber. (last visited March 13, 2025)

sense of 'relating to a resident' to distinguish such a subscriber from a business or commercial telephone subscriber." *Cacho,* 739 F. Supp. 3d at 206. This distinction "would make little sense if the term 'residential subscriber' referred to users with landlines physically located in their residences, rather than users who use their phones for residential purposes, because many individuals operate home-based businesses." *Id.* at 207. Indeed, if a consumer is using a landline at their residence to operate a home-based business, the consumer's number would not be covered by the protections of the TCPA.

### c. The TCPA protects "residential subscribers" no matter whether their phone is a cellphone or landline

The TCPA protects "residential subscribers," and that protection does not turn on the device the subscribers is using but their *purpose* in using the device. This understanding starts with the statute's text, and the differences between §§ 227(c) and 227(b). The TCPA uses the term "residential subscriber" § 227(c) when describing the DNCR's protections (contemplating "a single national database to compile a list of telephone numbers of *residential subscribers* who object to receiving telephone solicitations") (emphasis added). In contract, § 227(b) applies to any "cellular telephone service" (and other specified technologies) when prohibiting telemarketers from using an "automated telephone dialing system" to place calls. In other words, § 227(b) considers technologies while § 227(c) considers people. Under that standard, the term "residential telephone subscriber" in § 227(c) refers to a type of user and not the type of technology.

Yet, Ideal Concepts seizes on this distinction to mean the opposite: "[t]he use of 'cellular telephone service' in 47 U.S.C. § 227(b)(1) and the *omission* of that term in 47 U.S.C. § 227(c) leads to the conclusion that the omission was *intentional*." Def.'s Mot. p. 13. But the problem this interpretation is it requires some wordplay with the text to work, as Ideal Concepts shows in its next paragraph: "Congress crafted an explicit statutory scheme, utilizing the terms (i) 'cellular

telephones' and (ii) 'residential telephones' in specific ways[.]" *Id*. This distorts the text, as § 227's provisions never distinguish "cellular telephones" and "residential telephones." Again, the sections serve differing purposes, with § 227(c) protecting "residential telephone *subscribers*" and § 227(b) restricting ATDS calls to specified *device* lines. As the Southern District of New York put it: "Congress's use of the word 'line' in Section 227(b) must be understood to refer to the nature of the equipment," and the "omission of the word 'line' in Section 227(c) and its substitution of that word with 'subscriber' demonstrates that Section 227(c)'s applicability depends on the type of subscriber and the function for which the subscriber uses the phone rather than on the particular technology the subscriber uses." *Cacho*, 739 F. Supp. 3d 195, 206.

All decisions post-*Loper* considering this issue have reached that conclusion, including four times in this District alone. *Butler*, 2025 U.S. Dist. LEXIS 47774, at *5; ("Having reviewed the parties' arguments and the relevant case law, the Court agrees with the vast majority of courts that have determined that § 227(c) applies to cell phones when used for residential purposes."); *Cacho v. Amity One Debt Relief*, No. EP-24-CV-160-KC, 2024 U.S. Dist. LEXIS 197640, at *11 (W.D. Tex. Oct. 24, 2024) (same) *Callier v. Unified Health, LLC*, NO. EP-23-CV-375-KC, 2024 U.S. Dist. LEXIS 125002, *16 (W.D. Tex. July 15, 2024) (same); *Salaiz v. VSC Operations LLC*, No. EP-23-CV-423-KC, 2024 U.S. Dist. LEXIS 121927, at *12-13 (W.D. Tex. July 10, 2024) (same).

And the Western District is not alone. In *Lirones*, the Ohio Northern District Court held: "[i]t follows that Congress's omission of the word 'line' and use of the word 'subscriber' in § 227(c) therefore refers to the type of subscriber and the function for which the subscriber uses the phone rather than the type of technology." 2024 U.S. Dist. LEXIS 165900, at *16-17. *See also*

*Lyman v. Quinstreet, Inc.,* No. 23-cv-05056-PCP, 2024 U.S. Dist. LEXIS 123132, at *9 (N.D. Cal. July 12, 2024) (same) *Jackson,* 2024 U.S. Dist. LEXIS 8811, at *15 (same).[3]

While no Circuit has addressed this exact issue post-*Loper,* this Circuit has opined that the TCPA applies to calls received by cellular phones and subsequently rejected a narrow reading of "residential telephone subscriber" in a related context. *Cranor*, 998 F.3d at 690-91. The First, Third, Fourth, and Ninth Circuits have also generally applied the statute to cellphones. Citing the "overall intent of the TCPA," the Ninth Circuit adopted an expansive interpretation of the FCC's "presumption" that a wireless phone subscriber on the DNCR is a residential subscriber even when the use is shown to be mixed between business and personal. *Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1223 (9th Cir. 2022); accord *Murray v. Grocery Delivery E-Services USA Inc.,* 55 F.4th 340, 348 (1st Cir. 2022) (rejecting significance of "argument that cell phone users are not 'residential telephone subscribers'" and finding that it "runs headlong into the FCC's express statements to the contrary.") The Fourth Circuit concluded the TCPA's language was clear and that numbers on the Do Not Call Registry, through their mere registration, are presumptively residential. *Krakauer v. Dish Network, LLC,* 925 F.3d 643, 657 (4th Cir. 2019). The Third Circuit stated that "[a]lthough it is true that the TCPA placed particular emphasis on intrusions upon the privacy of the home in 1991, this expression of particular concern for residential calls does not

---

[3] Other cases include: *Misner v. Empire Auto Protect, LLC*, No. 2:24-cv-1282, 2024 U.S. Dist. LEXIS 202146, at *9 (S.D. Ohio Nov. 6, 2024) ("The Court also finds that cellular telephone users can be considered 'residential telephone subscribers' [in] 47 U.S.C. § 227(c) and 47 C.F.R. §§ 64.1200(c)-(d).); *Hudson v. Palm Beach Tan, Inc.*, No. 1:23CV486(WO)(JEP), 2024 U.S. Dist. LEXIS 165676, *7 (M.D.N.C. Aug. 12, 2024) *report and rec. adopted*, No. 1:23-CV-486, 2024 U.S. Dist. LEXIS 164763, (M.D.N.C. Sept. 13, 2024) ("[T]he vast majority of recent cases that have considered this issue, in this Circuit and others, have found that a cell phone may plausibly be alleged in a complaint to be residential, and thus covered by the TCPA."); *Cacho*, 739 F. Supp. 3d at 205 ("A 'residential subscriber,' by contrast, does not refer to the specific phone technology, but to the type or identity of the subscriber to the technology.").

limit—either expressly or by implication—the statute's application to cell phone calls." *Susino v. Work Out World, Inc.,* 862 F.3d 346, 349 (3d Cir. 2017).

In sum, the Court need not defer to the FCC to reach the same conclusion; it need only apply its reasoning from *Butler*, *Cacho*, *Callier*, and *Salaiz* and the prevailing jurisprudence on this issue. As below, to do so otherwise would gut the TCPA's protections for "residential subscribers" using cellphones—i.e., virtually every American.

### d. It would defeat the TCPA's purpose to interpret it as Ideal Concepts does

Congress enacted the TCPA because "people felt almost helpless in the face of repeated and unwanted telemarketing calls." *Krakauer,* 925 F.3d at 663 (citing S. Rep. No. 102-178, at 1-2 (1991)). To solve this problem, "Congress responded with an Act that featured a combination of public and private enforcement, allowing suits both to enjoin intrusive practices and deter future violations through money damages." *Id*. Accordingly, when interpreting the TCPA, the Court must remember it exists to protect consumers from unwanted telemarketing. *Id.* at 650, 654. *See also Suriano v. French Riviera Health Spa, Inc.,* No. 18-9141, 2018 U.S. Dist. LEXIS 216018, at *6 (E.D. La. Dec. 20, 2018) (also citing S. Rep. 102-178, at 5 (1991)).) That requires the Court to avoid overanalyzing the statute to defeat its purpose: "It would be dispiriting beyond belief if courts defeated Congress' obvious attempt to vindicate the public interest with interpretations that ignored the purpose, text, and structure of this Act at the behest of those whose abusive practices the legislative branch had meant to curb." *Krakauer,* 925 F.3d at 663.

In this context, courts recognized cellphones "are now such a pervasive and insistent part of daily life that the proverbial visitor from Mars might conclude they were an important feature of human anatomy." *Riley v. California*, 573 U.S. 373, 385 (2014). Indeed, cellphones are with most of us at all times – at the dinner table, at school, at work and in our bedrooms. Rejecting Ideal

Concepts' narrow reading of "residential telephone subscriber" serves the privacy rights the TCPA seeks to protect. In an environment where consumer privacy is eroding, it would be deeply concerning for a court to invalidate the TCPA's privacy protections based on a rigid and narrow reading of the term "residential subscriber," especially considering consumers have presumed for more than two decades that they are protected from the unwanted harassment of telemarketers by including their number on the DNCR, cellphone or not.

### e. *Loper* encourages the Court to consider the FCC's interpretation

In *Loper*, the Supreme Court confirmed that Congress confers discretionary authority on agencies, and that an agency's interpretation can guide a court when construing a statute. In so doing, courts "need only fulfill their obligations under the APA to independently identify and respect such delegations of authority, police the outer statutory boundaries of those delegations, and ensure that agencies exercise their discretion consistent with the APA." *Loper,* 603 U.S. at 404. The Supreme Court recognized that sometimes the best reading of a statute is that it affirmatively and directly "delegates discretionary authority" to an agency to interpret the law. *Id.* at 371. When Congress delegates such discretionary authority, a reviewing court's task after *Loper* is to ensure the agency has engaged in "reasoned decision making" within the boundaries of its delegated authority. *Id.* at 395.

In 2003 the FCC promulgated regulations regarding the TCPA's do-not-call rules in accordance with Congress' directive. And those regulations "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991.'" 47 C.F.R. § 64.1200(e). *Hudson*, 2024 U.S. Dist. LEXIS 165676, *11, *report and rec. adopted*, 2024 U.S. Dist. LEXIS 164763.

To further that objective, the FCC reasoned**:** "it is well-established that wireless subscribers often use their wireless phones in the same manner in which they use their residential wireline phones… As a practical matter,…we will presume wireless subscribers who ask to be put on the national do-not-call list to be 'residential subscribers.' *2003 FCC Order*, 18 FCC Rcd. at 14038-14039. The FCC then incorporated this ruling into its codified regulations. 47 C.F.R. § 64.1200(e) ("[t]he rules set forth in paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, "Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991.")

Applying *Loper*, courts have held the FCC 2003 Order is persuasive and within the congressional delegation of authority. *See Lirones*, 2024 U.S. Dist. LEXIS 165900, at *14 ("Both district courts that have considered this issue post-*Loper* have reached the same conclusion: cellular telephone users can be considered 'residential telephone subscribers' under § 227(c).") *and Lyman*, 2024 U.S. Dist. LEXIS 123132, at *11 ("The FCC's interpretation rests on factual premises within the agency's expertise, thus giving its 'interpretation particular power to persuade, if lacking power to control." (citing *Loper*, 603 U.S. at 402)).  Likewise, and consistent with the Supreme Court's holding in *Loper*, this court can respect such delegation of authority.

**f.  The cases Ideal Concepts relies on do not apply**

Ideal Concepts claims "myriad courts have determined 47 C.F.R. § 64.1200(c) does not apply to cellular telephones" but that characterization falls flat when the Court considers the "myriad" decision Ideal Concepts relies on. Def.'s Mot. p. 4. As shown above, within just this district alone, the number of cases that rejected Ideal Concept's argument dwarf those finding that cellphones cannot be residential telephones. And Ideal Concept's "myriad cases" include only

four: *Callier v. GreenSky, Inc.*, No. EP-20-CV-00304-KC, 2021 WL 2688622, at *6 (W.D. Tex. May 10, 2021); *Cunningham v. Britereal Mgmt., Inc.*, No. 20-cv-144-SDJ-KPJ, 2020 WL 7391693, at *7 (E.D. Tex. Nov. 20, 2020); *Cunningham v. Politi*, No. 18-00362ALMCAN, 2019 WL 2519702, at *4 (E.D. Tex. Apr. 26, 2019; and *Gaker v. Q3M Ins. Sols.*, No. 22-cv-00296, 2023 WL 2472649, at *3 (W.D.N.C. Feb. 8, 2023). Def.'s Mot. p. 4.

These cases do not change the analysis here. The first three involved two *pro se* plaintiffs, who either failed to address defendant's arguments or failed to plead they used their cellphone for residential purposes, and the last case is an unresolved magistrate recommendation. In *Callier,* the Court rejected the *pro se* plaintiff's § 227(c) claims on the grounds that he failed to address defendant's argument regarding cellphones. *Callier,* 2021 U.S. Dist. LEXIS 126769, at *14. ("Within his Response, Plaintiff . . . does not address Defendant's argument that the regulation does not apply to cellphones…Plaintiff does not cite—and the Court is not aware of—any authority that has found § 64.1200(d)(l) applicable to cellphones.") Two other courts in this district acknowledge the conclusion in *Callier* was confined to and informed by the *pro se* plaintiff's briefing and allegations in that case only. *See Callier v. Momentum Solar LLC,* No. EP-23-CV-00377-KC, 2024 U.S. Dist. LEXIS 75324, at *6 (W.D. Tex. April 25, 2024) *and Guadian*, 2024 U.S. Dist. LEXIS 70167, at *15, fn. 3. In *Guadian,* the Court stated, "[t]o the extent that [*Callier v.*] *GreenSky* stands for a broader holding that the residential telephone regulations can never apply to calls made to cell phones, the Court concludes it was incorrectly decided in light of other authority referenced above." *Id.*

The *Cunningham* cases from the Eastern District of Texas fail for the same reason. In both, the same serial *pro se* plaintiff failed to plead that his cellphone served as a residential line. *See* ECF 41, No. 4:18-CV-00362-ALM-CAN *and* ECF 1, No. 4:20-CV-144-SDJ-KPJ. *Politi* did not

even rule that "47 C.F.R. § 64.1200(c) does not apply to cellular telephones" as Ideal Concepts claims. Rather, the court noted that "[r]ecent courts considering claims asserted by Plaintiff[4] have found [the telemarketing regulation] not to encompass Plaintiff's cellular phones and have dismissed his claims," but added that "[h]owever, even if Plaintiff's cellular phone did fall within the definition of a 'residential telephone subscriber' under the TCPA, Plaintiff still has not adequately pleaded his TCPA claim under § 227(c)(5)..." *Politi,* 2019 U.S. Dist. LEXIS 102545*, at *11-12. It dismissed the plaintiff's claims on that basis. *Politi* has been criticized by other courts and labeled contrary to common sense. *See, e.g., Hirsch v. USHealth Advisors, LLC,* 337 F.R.D. 118, 131 (N.D. Tex. 2020). *Britereal,* which involved the same plaintiff, is also an outlier. Plaintiff's claims were dismissed without much analysis. The only case *Britereal* cites in support of its holding is *Politi,* which is obviously problematic as a result. *Britereal,* 2020 U.S. Dist. LEXIS 236135, at *16.

Outside this Circuit, Ideal Concepts relies on *Gaker v. Q3M Ins. Sols.* (Def.'s Mot. pp. 4, 6, 15, 20) but omits critical context: *Gaker* was only an unresolved magistrate recommendation, and the Court later entered judgment for the plaintiff on liability.[5] Thus, *Gaker,* if anything, betrays Ideal Concept's own position. Even the Magistrate Judge's opinion in *Gaker* acknowledges that other district courts in the Fourth Circuit, where that decision was, have held that wireless numbers are entitled to DNCR protections. 2023 U.S. Dist. LEXIS 44919, at *5 (citing *Boger v. Citrix Sys. Inc.,* No. 8:19-cv-01234-PX, 2020 U.S. Dist. LEXIS 71072, 2020 WL 1939702, at *4 (D. Md. Mar. 3, 2020) ("[T]he Complaint does not foreclose that [the plaintiff's] cell phone functioned as

---

[4] Citing five cases from M.D. Ten. brought by the same plaintiff.

[5] The plaintiff in *Gaker* appealed the Magistrate Judge's Opinion to the District Judge. ECF 29, No. 3:22-CV-00296-RJC-DSC. However, the parties then jointly requested a stay of that case pending settlement discussions. *Id.* at 31.

a residential telephone number for the purposes of the statute.")). *Gaker,* like *Britereal,* relied on *Politi*, 2019 U.S. Dist. LEXIS 102447, *supra,* an outlier criticized as being contrary to common sense.

Aside from these four "myriad cases," Ideal Concepts also invokes *Facebook, Inc. v. Duguid,* 592 U.S. 395, 400 (2021) throughout its motion (Def.'s Mot. pp. 6, 17-18), which is simply inapplicable to the issue at hand. At no point in *Facebook, Inc. v. Duguid* did the Supreme Court reference 47 C.F.R. § 64.1200(c)(2) or 47 U.S.C. § 227(c)(5), or use the word "residential" even in passing. *See* 592 U.S. 395 (2021). Considering the Court's holding—"that a necessary feature of an autodialer under § 227(a)(1)(A) is the capacity to use a random or sequential number generator to either store or produce phone numbers to be called," *id*. at 409—it had no reason to. The decision does not impact other requirements of the TCPA, including the DNCR rules, which do not depend on the type of technology used to make a call.

Finally, Ideal Concepts erroneously relies on dicta from a footnote in *Shelton v. Fast Advance Funding, LLC,* 378 F. Supp. 3d 356, 363, n.7 (3d Cir. 2020) to support its argument (Def.'s Mot. pp. 5, 14-15), although the *Shelton* court entered judgment for the plaintiff on his Section 227(c) claim for calls placed to his cellphone. *Id*. The *Shelton* court's decision was affirmed by the Third Circuit. *Shelton v. Fast Advance Funding, LLC*, 805 F. App'x 156, 159 (3d Cir. 2020). Yet Ideal Concepts relies on a footnote in the district court's opinion where the court "questioned" whether Congress and the FCC intended "residential subscribers" to include cellphone users but declined to entertain the question because it was not raised by the defendant, nor was the issued briefed by either party. *Shelton*, 378 F. Supp. 3d at 363 n. 7. "Questions which merely lurk in the

record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Webster v. Fall*, 266 U.S. 507, 511 (1925).

Simply put, Ideal Concepts' minority of cases are either distinguishable, or simply ill-reasoned and underdeveloped. Therefore, the Court should adopt the reasoning of the "vast majority" of courts, in denying Ideal Concepts' motion to dismiss.

### g. Under the Hobbs Act the Court lacks jurisdiction to consider to set aside the FCC's 2003 Order

This case has a wrinkle that *Loper* did not: the Hobbs Act provides that appellate courts have "exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of" certain "final orders of the Federal Communication Commission." 28 U.S.C. § 2342(1); *PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 588 U.S. 1, 6-8 (2019) (same). "Under the Hobbs Act…in the absence of a challenge to the 2003 FCC ruling in the appropriate federal court of appeals, the FCC's rulings interpreting the TCPA have 'the force of law,' so this court must follow them." *Abdallah v. FedEx Corp. Servs.,* No. 16cv-3967, 2019 U.S. Dist. LEXIS 158830, *16 (N.D. Ill. Sep. 18, 2019) (collecting cases).

Acknowledging this, Ideal Concepts makes passing reference to the fact that there is a case pending before the Supreme Court challenging the Hobbs Act, *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, No. 23-1226. Ideal Concepts stops the argument there, implying that because a decision from the Supreme Court is forthcoming, this Court should overturn the 2003 FCC Order, strip DNCR protections from cellphones nationwide, and permit unlimited telemarketing regardless of DNCR status. But the Fifth Circuit commands the Court to do the opposite: "[t]he Hobbs Act essentially strips the jurisdiction of district courts to consider the validity of an agency's legal interpretation of the statutes contained therewithin." *Crown Castle*

*Fiber, LLC v. City of Pasadena*, 76 F.4th 425, 439 n.23 (5th Cir. 2023). Ideal Concepts cannot wish away this reasoning.

### h.  This matter does not qualify for immediate interlocutory appeal

The Fifth Circuit has long recognized a general disfavor for interlocutory appeals, and a requirement to strictly construe statutes permitting such appeals. *Fannie Mae v. Hurst*, 613 F. App'x 314, 318 (5th Cir. 2015) (per curiam); *Clark-Dietz & Assoc.-Eng'rs, Inc. v. Basic Constr. Co.*, 702 F.2d 67, 68-69 (5th Cir. 1983) (interlocutory appeals are exceptional and "[d]o not lie simply to determine the correctness of a judgment."). To properly certify an order for interlocutory appeal under Section 1292(b), Ideal Concepts must prove: (1) a controlling question of law is involved, (2) there is substantial ground for difference of opinion about the question of law, and (3) immediate appeal will materially advance the ultimate termination of the litigation." *Rico v. Flores*, 481 F.3d 234, 238 (5th Cir. 2007). Judges have unfettered discretion to deny certification, even when the three statutory criteria are present. *Ramirez v. City of El Paso Tex.*, No. EP-17-CV-00193-DCG, 2022 U.S. Dist. LEXIS 197288, at *7, n.9 (W.D. Tex. Oct. 31, 2022). When the appeal is sought through motion, the moving party has the burden to show an interlocutory appeal is required. *Hurdsman v. Gleason,* 1:22-CV-254-RP, 2024 U.S. Dist. LEXIS 22113, at *4 (W.D. Tex. Feb. 8, 2024). Ideal Concepts has not met its burden.

Ideal Concepts urges this Court to recognize a "split" in authority over the relief it seeks, coyly suggesting the "split" is close rather than overwhelmingly one-sided against it. Ideal Concepts cites (1) *Cunningham v. Britreal,* (2) *Callier v. Greensky,* and (3) *Gaker v. Q3M Ins. Sols.,* to support its argument that there is "substantial ground for difference of opinion." Def.'s Mot. pp. 19-20. These cases were discussed in great length in Section IV.D. It is simply not a close call. While Ideal Concepts claims no circuit has evaluated this issue in an adversarial posture, post-

*Loper* (Def.'s Mot., p. 20), "[t]he mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion." *Tex. v. Ysleta del Sur Pueblo*, 370 F.Supp.3d 705, 710 (W.D. Tex. 2018). But this is not a question of first impression. Rather, it "is far from a novel question. The weight of existing authority indicates that cellphone users may be considered residential telephone subscribers, although whether a cellphone is used for residential purposes involves a more fact-intensive question." *Jackson,* 2024 U.S. Dist. LEXIS 8811, at *10.

At least one other court, post-*Loper,* has denied interlocutory review on this same issue, stating the cases defendant relies on are not persuasive. *Lirones,* 2024 U.S. Dist. LEXIS 165900, at *19-22. Nor is there any circuit split, as the only circuit courts to evaluate the issue have determined that personal cellphone numbers are protected by the DNCR. *See Murray,* 55 F.4th at 348; *Chennette,* 50 F.4th at 1224-26; *Cranor,* 998 F.3d at 690-91; *Krakauer,* 925 F.3d at 657; *Susino,* 862 F.3d at 349. Ideal Concepts therefore fails to carry its burden to demonstrate that a substantial difference of opinion exists warranting the exceptional relief it seeks in the form of an interlocutory appeal.

## V.    CONCLUSION

For the reasons above, Ideal Concepts' motions to dismiss, or, in the alternative, to certify for interlocutory appeal, should be denied.


Dated: March 31, 2025              By:  */s/ Alex Phillips*
                                        Alex Phillips (*pro hac vice*)
                                        STRAUSS BORRELLI PLLC
                                        One Magnificent Mile
                                        980 N Michigan Avenue, Suite 1610
                                        Chicago IL, 60611
                                        Telephone: (872) 263-1100
                                        Facsimile: (872) 263-1109

aphillips@straussborrelli.com

Andrew Roman Perrong, Esq.
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529
Fax: 888-329-0305
a@perronglaw.com

Anthony Paronich (*pro hac vice*)
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Phone: 617-485-0018
Fax: 508-318-8100
anthony@paronichlaw.com

*Attorneys for Plaintiff and the Settlement Class*

## CERTIFICATE OF SERVICE

I, Alex Phillips, hereby certify that on March 31, 2025, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF system, which will send notification of such filing

to counsel of record, below, via the ECF system.

DATED this 31st day of March, 2025.

STRAUSS BORRELLI PLLC

By: */s/ Alex Phillips*
    Alex Phillips
    aphillips@straussborrelli.com
    STRAUSS BORRELLI PLLC
    One Magnificent Mile
    980 N Michigan Avenue, Suite 1610
    Chicago IL, 60611
    Telephone: (872) 263-1100
    Facsimile: (872) 263-1109