**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| MICHAEL CHAD BLACK, *on behalf of himself and others similarly situated*, § § § | |
| Plaintiffs, § | Case No. 1:24-cv-1323-ADA |
| § | |
| v. § | |
| § | |
| IDEAL CONCEPTS, INC., § § | |
| Defendant. § | |

**DEFENDANT IDEAL CONCEPTS, INC.'S
REPLY IN SUPPORT OF ITS MOTION TO DISMISS OR, IN THE ALTERNATIVE,
<u>CERTIFY PURSUANT TO 28 U.S.C. § 1292(b)</u>**

The Supreme Court recently reminded in the TCPA context that "[t]his Court must interpret what Congress wrote," and *disregarded* an argument that the TCPA is an "agile tool". *Facebook, Inc. v. Duguid*, 592 U.S. 395, 409 (2021). Much like the Supreme Court put it, Plaintiff's "quarrel is with Congress, which did not" write the TCPA "as malleably as he would have liked." *Id.*[1]

While Plaintiff (and his authority) seek to update the TCPA to account for modern cell phone usage, the TCPA's meaning was fixed in 1991. *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 400 (2024). The term "residential telephone subscriber" was intended in 1991 to mean a subscriber to a landline telephone. "Residential" was not a free-floating term identifying any type of device used for personal reasons. Finally, this Court should not, under *Loper Bright*, defer to—and is certainly not bound by, as Plaintiff argues—the FCC's 2003 interpretation.

Ideal Concepts recognizes that this Court recently sided with Plaintiff's view. *See Butler v. Texas Card House, LLC*, No. 24-cv-01543, Dkt. 11 (W.D. Tex. March 17, 2025). Should this Court do so again here, interlocutory appeal would be prudent. The issue at hand is a recurring and fundamental TCPA issue with conflicting trial court interpretations and is completely void of salient appellate review, much less review post-*Loper Bright*. Dismissal or interlocutory review is likely to be the only way that this issue receives appellate review.

## DISCUSSION

**I.      THE PLAIN LANGUAGE OF THE TCPA WARRANTS DISMISSAL.**

     **A.      "Residential Telephone Subscriber" Is a Subscriber to a Residential Telephone.**

Plaintiff argues that the term "residential telephone subscriber" can be rearranged and chopped up to mean a "residential subscriber" to a telephone, and that "residential" means merely "personal". (Dkt. 18 at 5-7.) This argument runs into critical problems of statutory interpretation.

---

[1]      Ideal Concepts also notes, should this case move beyond the motion to dismiss stage, publicly available information suggests that Plaintiff's phone number is associated with a business.

First, the term "residential telephone"—be it "residential telephone line" or "residential telephone subscriber"—appears throughout the TCPA and its regulations. *See* 47 U.S.C. §§ 227(b)(1)(B), (c)(3); 47 C.F.R. §§ 64.1200(a)(7)(ii), (b), (c). This term should be interpreted consistently. *See, e.g.*, *IBP, Inc. v. Alvarez*, 546 U.S. 21, 34 (2005) ("[T]he normal rule of statutory interpretation that identical words used in different parts of the same statute are generally presumed to have the same meaning."). It would make no sense to view "residential" as modifying "telephone" in one context, but modifying "subscriber" in the other, as Plaintiff's authority does.

Second, an adjective typically modifies the noun that follows it. *See, e.g.*, *Andrulis Pharms. Corp. v. Celgene Corp.*, No. 13-1644, 2015 WL 3978578, at *6 (D. Del. June 26, 2015), *aff'd*, 667 F. App'x 775 (Fed. Cir. 2016) ("Under normal rules of grammar, and absent a compelling reason, an adjective modifies a noun close to it, usually following the adjective."); *In re Swetic*, 493 B.R. 635, 639 (Bankr. M.D. Fla. 2013) ("Attributive adjectives, the most common type, immediately precede the noun they modify."). "Residential" modifies "telephone".

Third, Plaintiff and his cases then give the word "residential" new meaning. By Plaintiff's definition, "residential" means "used as a residence or by residents; restricted to or occupied by residences; and of our relating to residence or residences." (Dkt. 18 at 5.) Plaintiff's authority contorts this word to mean "for personal activities" or "personal" or "relating to a resident". *Cacho v. McCarthy & Kelly*, 739 F. Supp. 3d 195, 206 (S.D.N.Y. 2024); *Jackson v. Direct Bldg. Supplies LLC*, No. 23-01569, 2024 WL 184449, at *5 (M.D. Pa. Jan. 17, 2024). By this authority, "residential telephone line" means a landline, *see Cacho*, 739 F. Supp. 3d at 206, but "residential telephone subscriber" broadly means someone who uses any type of phone for personal use.

That is a bridge too far. *See, e.g.*, *Shelton v. Fast Advance Funding, LLC*, 378 F. Supp. 3d 356, 363 n.7 (E.D. Pa. 2019), *aff'd*, 805 F. App'x 156 (3d Cir. 2020) ("[T]he plain language of

2

'residential telephone' describes a telephone used by individuals in the home, and not a cellular telephone, which can be used anywhere."). Looking to the meaning of "residential" near the time of the TCPA's enactment, "'Residential' means 'of or pertaining to residence or residences' and 'residence' means 'the place, esp. the house, in which a person lives or resides; dwelling place; home.'" *Matter of Emory Properties, Ltd.*, 106 B.R. 318, 320 (Bankr. N.D. Ga. 1989). Plaintiff's interpretation divorces "residential" from "residence" and distorts the word past common usage.[2]

### B.    "Residential Telephone Subscriber" Must be Interpreted as Written in 1991.

Plaintiff (and many of his cases) makes much of the fact that technological preferences have shifted since the TCPA was enacted in 1991. This argument is wrong as a matter of law. As the Supreme Court recently reiterated, "every statute's meaning is fixed ***at the time of enactment***." *Loper Bright*, 603 U.S. at 400 (emphasis added). The goal is to reach the best interpretation of the TCPA *in 1991*, and not the best interpretation to comport with modern phone use.

A key historical analysis of "residential telephone subscriber" can be taken from the opinion of Judge Ikuta, the dissenting judge in Plaintiff's cited *Chennette v. Porch.com* decision. *See* 50 F.4th 1217, 1231 (9th Cir. 2022) (Ikuta, J. dissenting). While *Chennette* predates *Loper Bright* (and Judge Ikuta rests on the now defunct *Chevron* deference), the analysis is instructive:

> The statute does not define the key term "residential telephone subscribers." At the time Congress enacted the TCPA, the most applicable dictionary definition for "residence" was "[a] house where one's home is; a dwelling house." Residence, Black's Law Dictionary, Sixth Edition (1990). The dictionary defines the word "residential" to mean "of, relating to, or connected with residence or residences." Residential, Webster's Third New International Dictionary (1981. Thus, a "residential telephone" is by its terms a telephone connected with a residence. A cell phone, which is mobile and not connected to a house,

---

[2]    Residential does not mean "personal". Congress knows how to use terms such as "personal" when it wants to. *See, e.g.*, 15 U.S.C.A. § 1692a(5) (defining "debt" to mean an obligation arising out of a transaction "primarily for personal, family, or household purposes").

3

> fixed abode, or dwelling, is not "residential" under the definitions provided by dictionaries current when the TCPA was enacted.

*Id* at 1233. Judge Ikuta also turned to legislative history to note "[t]he common understanding that the terms 'residential' and 'residential telephone' refer to a land line in the home." *Id.* at 1233-34

Similarly, when the FCC first evaluated implementing a national do-not-call registry, it did so under the subheading "Alternatives to Restrict Telephone Solicitation to ***Residences***". *In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 7 F.C.C. Rcd. 8752, 8758 (1992) (emphasis added); *see also Tel. Consumer Prot. Act Tel. Solicitations, Autodialed & Artificial or Prerecorded Voice Message Tel. Calls, & the Use of Facsimile Machines*, 8 F.C.C. Rcd. 506, 506 (1993) ("Different rules and regulations apply to calls placed to ***residences*** and calls placed to businesses.") (emphasis added). Legislative history refers specifically to "residential telephone customers" and separately discusses cell phones. H.R. REP. 102-317, 6; S. REP. 102-178, 1 ("[T]he purposes of the bill are to protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls to the home . . . .")

Missing entirely from Plaintiff's opposition (and his cited cases) is any contention that the term "residential telephone subscriber" was intended—*at the time* of enactment—to encompass cell phones. Modern usage matters not. The Supreme Court has already rejected efforts to broadly interpret the TCPA to account for changing technologies. *See Facebook*, 592 U.S. at 409. Further, not even the FCC claimed that the term "residential telephone subscriber" *was intended* in 1991 to cover cell phones. When it sought comment on this issue, the FCC asked only "should wireless telephone numbers or a subset thereof be considered 'residential telephone numbers' ***for the purposes of the Commission's rules*** on telephone solicitations?" *In Re Rules & Reguls. Implementing Tel. Consumer Prot. Act of 1991*, 17 F.C.C. Rcd. 17459, 17485 (2002) (emphasis added). And in its order, it relied not on dictionary definitions, but on policy rationales 10 years

4

after the fact. *See In Re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039 (2003). The FCC was also aware of the problems its interpretation could cause, ensuring its interpretation was limited to the TCPA. *See id.* at 14039 n.139.[3]

At the end of the day, "the TCPA itself presupposes . . . that calls to residential and wireless numbers warrant differential treatment." *ACA Int'l v. Fed. Commc'ns Comm'n*, 885 F.3d 687, 713 (D.C. Cir. 2018). While this may be anachronistic, it is for Congress alone to change.

C.     **Plaintiff's Statutory Interpretation Arguments Are Incorrect.**

Plaintiff next turns to two entirely misguided statutory interpretation arguments, neither of which support the view that "residential telephone subscriber" is technology-agnostic.

First, Plaintiff points to the "established business relationship" definition, which includes the terms "business subscriber" and "residential subscriber". (Dkt. 18 at 6-7.) This argument, derived from the *Cacho* decision, is misplaced. At the outset, this definition was added in ***2005*** (14 years after the TCPA) and applies only to ***faxes***. *See* JUNK FAX PREVENTION ACT OF 2005, PL 109–21, July 9, 2005, 119 Stat 359; 47 U.S.C. § 227(a)(2). The *Cacho* court omits from its analysis that the terms "business subscriber" and "residential subscriber" pertained to fax machines, which are landlines by definition. *See* 47 U.S.C. § 227(a)(3); *Cacho*, 739 F. Supp. 3d at 206. Further, in adding this definition, Congress noted it "first addressed the legality of faxing unsolicited advertisements to ***residential telephone subscribers*** in the [TCPA] . . . ." S. REP. 109-76, 2, 2005 U.S.C.C.A.N. 319, 320 (emphasis added). Congress thus *continued* to believe "residential telephone subscribers" referred to a landline—faxes cannot be sent to a cell phone.[4]

---

[3]     The FCC also been inconsistent in its interpretation. *See In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1859 (2012) (referring to the phrase "residential subscriber" as applying only to "any ***residential line***.") (emphasis added).
[4]     There is also no reason to believe "residential" means "non-business". *See Cacho*, 739 F. Supp. 3d at 206. A cell phone and a landline are equally capable of being used as business lines, but that bears not on whether a residential telephone subscriber is a subscriber to a landline phone.

Second, Plaintiff contends that the term "residential telephone line" in 47 U.S.C. § 227(b), contrasted with the term "residential telephone subscriber" in 47 U.S.C. § 227(c), establishes that the two must have entirely different meanings—the former referring to a landline and the latter referring to anyone using any telephonic device for personal reasons. (Dkt. 18 at 7-9.) As detailed in Ideal Concepts' Motion, and below, this argument is unpersuasive. (Dkt. 14 at 15-16.)

The difference in terms is not intended to cover different technologies, but merely different contexts. Subsection 227(b) prevents persons from using certain technologies to contact certain phone lines. *See* 47 U.S.C. § 227(b)(1). Subsection 227(c) focuses, in turn, on "the need to protect residential telephone subscribers' privacy rights . . . ." *See* 47 U.S.C. § 227(c). Subsection 227(c) could not use the term "*line*" because "lines" do not have privacy rights. The idea that replacing "line" with "subscriber" renders the term device-agnostic, rather than contextual, is nonsensical.

This argument also falls under its own weight. Plaintiff (and the authority he cites) agree the term "residential telephone line" in Subsection 227(b) means a landline. (Dkt. 18 at 8; *Cacho*, 739 F. Supp. 3d at 206.) What Plaintiff and his authority ignore is that Subsection 227(b) has a consent exception—and consent would naturally come from a residential telephone *subscriber*. *See* 47 U.S.C. § 227(b); S. REP. 102-178, 7 ("[T]elemarketers must obtain the express consent of any residential telephone subscriber before placing an automated telephone call to that subscriber . . ."). "Residential telephone subscriber" must refer to a subscriber to a residential telephone line.

Congress went to great lengths in the TCPA to distinguish cellular and residential lines—crafting entirely different provisions for each. The term "residential telephone subscriber" must be read in that context. As the Supreme Court put it, "Congress . . . does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes." *Whitman v. Am. Trucking Associations*, 531 U.S. 457, 468 (2001).

### D. Plaintiff and His Authority Improperly Rely on Policy Rationales.

Plaintiff and his authorities improperly use an outcome driven logic that does not comport with the Supreme Court's instruction in *Loper Bright*. *See, e.g.*, *Cacho*, 739 F. Supp. 3d at 203 ("Defendant's interpretation of the TCPA would have sweeping practical consequences.") (internal quotations and citation omitted). Plaintiff, similarly, turns to overriding policy rationales to save his interpretation. (*See* Dkt. 18 at 10, relying on the pervasiveness of cell phones.)

The Supreme Court has made clear that the TCPA does not bend to the will of modern policy goals. *See Facebook*, 592 U.S. at 408 ("That Congress was broadly concerned about intrusive telemarketing practices, however, does not mean it adopted a broad autodialer definition."). As the Eleventh Circuit recently stated in the TCPA context, "[a]textual good policy cannot overcome clear text." *Ins. Mktg. Coal. Ltd. v. Fed. Commc'ns Comm'n*, 127 F.4th 303, 315 (11th Cir. 2025). And, as the D.C. Circuit put it more forcefully in the TCPA context: "the fact that the agency believes its [order] is good policy does not change the statute's text." *Bais Yaakov of Spring Valley v. Fed. Commc'ns Comm'n*, 852 F.3d 1078, 1083 (D.C. Cir. 2017). It remains the responsibility of Congress to adjust the statute to changing technological preferences.

As a practical matter, Plaintiff's policy concerns are grossly overstated. Ideal Concepts is not challenging whether the FCC has the authority, as a matter of convenience, to allow persons to list their cell phone numbers on the do-not-call registry. The issue here is limited to whether the private right of action afforded for alleged do-not-call violations under 47 U.S.C. § 227(c) applies to cell phone subscribers. Finding in favor of Ideal Concepts works no sea change.

### E. This Court Should Not Defer to, and Is Not Bound by, the FCC's 2003 Order.

The Supreme Court in *Loper Bright* directed courts to interpret statutes to achieve "the reading the court would have reached if no agency were involved." *Loper Bright*, 603 U.S. at 400 (internal quotations and citation omitted). Plaintiff urges to the contrary. (Dkt. 18 at 11-12.)

As noted above and in Ideal Concepts' Motion, the term "residential telephone subscriber" is not ambiguous. *See Facebook*, 592 U.S. at 407 (rejecting efforts to creatively read a term in the TCPA). That the TCPA affords the FCC some rulemaking authority does not mean the FCC can change the "plain and ordinary meaning" of statutory terms. *See Ins. Mktg. Coal.*, 127 F.4th at 313. Nor can the FCC impose requirements that the TCPA does not impose, or authorize the FCC to impose. *See Bais Yaakov*, 852 F.3d at 1083. The FCC has no more authority to interpret "residential telephone subscriber" to include cell phones than it can interpret the term to include computers (despite modern similarities between phone and email use). This Court must interpret "residential telephone subscriber" as that term was written in 1991, to reach the best reading of the term. *See, e.g.*, *Van Loon v. Dep't of the Treasury*, 122 F.4th 549, 563 (5th Cir. 2024).

There is thus no cause to defer to the FCC's interpretation, adopted *twelve years* after the TCPA. Nor is interpreting this phrase, as written in 1991, somehow within the FCC's expertise. *See Loper Bright*, 603 U.S. at 412 (noting "legal interpretation" is the province of the judiciary).

As a final argument, Plaintiff contends that this Court lacks jurisdiction to "set aside" the FCC's 2003 residential telephone subscriber guidance. (*See* Dkt. 18 at 16.) Plaintiff's throw-away argument ignores critical case law. The Fifth Circuit has already determined that "nowhere in the Hobbs Act does it state that the interpretation of the statutes cannot be challenged in later enforcement proceedings. . . ." *Crown Castle Fiber, L.L.C. v. City of Pasadena, Texas*, 76 F.4th 425, 440 n.23 (5th Cir. 2023). In so finding, the Fifth Circuit cited directly to Justice Kavanaugh's analysis in *PDR Network*. *See PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 588 U.S. 1, 12 (2019) (Gorsuch, J. concurring) ("The District Court is not bound by the FCC's interpretation of the TCPA."). Tellingly, Plaintiff wholly ignores Ideal Concepts' analysis of *PDR Network*, which Ideal Concepts incorporates for the sake of brevity. (*See* Dkt. 14 at 8-12.)

## II.     1292(B) CERTIFICATION IS PRUDENT.

### A.     There Is No Pertinent Appellate Authority.

Plaintiff repeatedly implies that a number of circuit courts, including the Fifth Circuit, have evaluated the "residential telephone subscriber" issue at hand. (*See* Dkt. 18 at 1, 9, 18.) This is false, and Plaintiff's analysis of the Fifth Circuit's *Cranor* case is disingenuous at best.

Plaintiff points to inapposite decisions from multiple Circuits. The Fifth Circuit in *Cranor* and the Third Circuit in *Sussino* evaluated the issue of Article III standing (in no way akin to the issue at hand). *See Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686, 693 (5th Cir. 2021); *Susinno v. Work Out World Inc.*, 862 F.3d 346, 352 (3d Cir. 2017). The First Circuit looked at the issue of class representative adequacy in a class settlement. *See Murray v. Grocery Delivery E-Servs. USA Inc.*, 55 F.4th 340, 348 (1st Cir. 2022). The Fourth Circuit evaluated whether the subscriber or recipient of the call has the right to bring a claim. *See Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 657 (4th Cir. 2019). In the Ninth Circuit's *Chennette* decision, the issue at hand was *conceded* by the defendant. *See Chennette*, 50 F.4th at 1223. This issue is crying out for appellate guidance.

### B.     Interlocutory Review Is Necessary to Answer this Recurring Question.

Of the 1292(b) inquiry, Plaintiff implicitly concedes that whether "residential telephone subscriber" includes cell phones is a controlling question of law and that immediate appeal could materially advance the termination of this suit. (*See* Dkt. 18 at 18.) Indeed, if a residential telephone subscriber does not include a cellular device, this case would be over immediately. Plaintiff challenges only the "substantial ground for difference of opinion" element. (*Id.*)

Plaintiff views this inquiry as merely taking stock of existing trial court cases to see which side has more. (*Id.*) It is not. There can be little doubt that this is a difficult question of law without Fifth Circuit precedent. *See Castellanos-Contreras v. Decatur Hotels, LLC*, 622 F.3d 393, 399 (5th Cir. 2010) ("Suffice it to say that this is a question about which reasonable jurists can—

9

and, in the case of this court, do—debate."); *Fields v. Brown*, No. 6:20-CV-00475, 2021 WL 2814893, at *3 (E.D. Tex. May 14, 2021). Ideal Concepts set forth in its Motion trial court decisions in its favor, which it need not repeat here. *See also Turizo v. Subway Franchisee Advert. Fund Tr. Ltd.*, 603 F. Supp. 3d 1334, 1340 (S.D. Fla. 2022) ("[A] proper interpretation of the statute would conclude that Congress intentionally omitted any reference to cellular telephones in section 227(c)," but incorrectly concluding the court was bound by the Hobbs Act). Furthermore, in *the only* appellate case to evaluate this issue (albeit, the issue was conceded and the decision was pre-*Loper*), there was a key dissent from the Circuit's position, demonstrating just how divided the judiciary is. *See Chennette*, 50 F.4th at 1234 (Ikuta, J. dissenting).

The issue before this Court is recurring and fundamental to myriad TCPA cases, regarding which there is a dearth of appellate authority. What makes this issue unique is that TCPA cases are often (if not predominantly) filed as class actions. Absent interlocutory review, for this issue to reach appeal, a defendant must (i) prevail on a motion to dismiss (as was the case in *Chennette*) or (ii) take a class action through trial. The complete absence of salient appellate authority proves the point—interlocutory appeal is likely to be the only practical way to obtain appellate guidance.

Ideal Concepts understands this Court has evaluated this issue, and was "not persuaded . . . that the majority position is incorrect." *Butler v. Texas Card House, LLC*, No. 1:24-cv-01543, Dkt. 11 (W.D. Tex. Mar. 17, 2025). While Ideal Concepts contends its analysis establishes precisely why the majority view is incorrect, interlocutory review in the alternative would be a prudent course of action to permit appellate authority over an issue in desperate need of it.

## CONCLUSION

For the foregoing reasons, Ideal Concepts respectfully requests the Court to (i) dismiss Plaintiff's Complaint with prejudice; (ii) in the alternative, certify its Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b); and (iii) award all other relief it deems equitable and just.

Dated: April 3, 2025                            Respectfully submitted,

/s/ Mark S. Eisen

Allyson R. Cady
acady@beneschlaw.com
**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
127 Public Square, Suite 4900
Cleveland, OH 44114-1284
Telephone: 216-363-4500
Facsimile: 216-363-4588

Mark S. Eisen (admitted *pro hac vice*)
meisen@beneschlaw.com
**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
71 S. Wacker Drive, Suite 1600
Chicago, Illinois 60606
Telephone: (312) 212-4949
Facsimile: (312) 767-9192

*Counsel for Ideal Concepts, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that I have served a true and correct copy of the foregoing upon each attorney of record and upon the Clerk of Court on this, the 3rd day of April, 2025.

/s/ Mark S. Eisen

Mark S. Eisen